PETE REYNOSA

PATRICIA REYNOSA

110 ANNED DRIVE

PLACENTIA, CA 92870

714-598-9232

FAX 505-212-0527



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETE REYNOSA AND PATRICIA REYNOSA | Case No.: SAC11-01955 CJC (ANx) |
| Plaintiffs, | RESPONSE TO DEFENDANT'S MOTION DISMISS |
| vs. | HONORABLE Cormac J. Carney |
| BANK OF AMERICA N.A.  ET AL | Date 2/27/12 |
| DOES 1 to 10, | TIME 1:30 PM |
| Defendants. | JURY TRIAL DEMANDED |

COMES NOW PETE REYNOSA AND PATRICIA REYNOSA. At all times Plaintiffs Sui Juris. Plaintiffs state the following claim; the Defendants are trying to defraud them of the right to their real property,110 ANNED DRIVE,PLACENTIA, California  hereafter the "subject property" .

1

1.For Diversity Jurisdiction PETE REYNOSA AND PATRICIA REYNOSA is domiciled at 110 ANNED DRIVE,PLACENTIA, California. BANK OF AMERICA NA ET AL  Hereinafter "BOA" is domiciled in Charlotte North Carolina.

2.Value in Dispute is over $75,000.00. Mortgage note in question is for $365,000.

3.The Plaintiff's are prepared to tender funds the Defendants can demonstrate are owed to them. Defendants must provide an accurate balance of the funds required to satisfy the alleged debt. Funds will be tendered in US dollar denominations. Defendants need only demonstrate to this Court they are as they have stated, a real party in interest.

4. FRCP 12(b)(6) Defendants are in agreement with our complaint in its entirety and wish to dismiss as there are no issues outstanding for this Court to decide. If this is indeed the Defendants position then a. stipulate the complaint is based in fact. b. Plaintiff requires their day in court to assess damages from Defendants.

5. Defendants are operating a Criminal Enterprise see Plaintiffs exhibit B1 The complete presentation by the Attorney General of Florida that describes in detail the fraudulent enterprise conducted by Defendants. There are numerous examples in this exhibit more than the two required. There are cases

where Defendants are being sued and it has been demonstrated

that they are not the true party in interest and therefore do

not have standing to bring a foreclosure.

4.For the record if Defendant's are found to have submitted

any fraudulent documents to this Court, Plaintiffs are demanding

full sanctions on the Defendants and their representation. See

Plaintiff's exhibit C handwriting expert Kathy Carlson

Curriculum Vitae .

5.Using the US Mail more then twice to collect an unlawful

debt. See Plaintiff's exhibits D1,D2. Defendant sent bills to

Plaintiff more than twice when they knew no legal obligation

existed. RICO was designed to stop criminal activities such as

the one Defendants are using to bring fraud on this Court.  The

fraud that the Defendant's continue to perpetrate is the

confiscation of property as in the instant case.

6.There is no statute of limitations on fraud. The

disclosure that was required would have let the borrower know

that  by selling this note into a REMIC Trust the Lender failed

to disclose that the trust had no  recourse to the property

otherwise the sale would cause a 100%  tax penalty on all

revenue received from that sale. The very nature of the REMIC

Trust is such that it cannot be in the property management

business or any other active business. To be  an active business

entity one time would disallow the REMIC status of the trust

thus triggering the 100% penalty on all gain from prohibited

activities such as foreclosure as in the instant case,

retroactive to the inception of the trust. The 1986 tax reform

act pages 421-428 (prohibited transactions and penalties for

prohibited transactions). Therefore the breech of fiduciary

responsibility is to continue to act as if you have the right to

this property knowing there can be no legal claim. Due to the

fact that this trust is a REMIC (see Plaintiffs exhibit A page

30, and Plaintiffs Exhibit A1-A3 ), the Defendants cannot own

the trust deed and note, if they do they are going to change

the status of the REMIC and trigger a monumental tax assessment

on the trust with has a flow through tax structure. The

Defendant's are not a real party of interest because of the

passive nature of the Trustee "BOA". Passive in this application

means very limited scope of duties not including anything like

foreclosure and ownership of the note and trust deed (see

FEDERAL ACCOUNTING STANDARDS BOARD No.140 page 45, § 80,81,82

TRUE SALE).

      6."BOA" has a history of providing falsified documents

to Courts to circumvent the law, churning out thousands of

falsified assignments, thus preventing home owners from

     receiving due process, expediting the foreclosure

process and      stealing properties nationwide

that the Defendants are not and      have

never been entitled to. This is a common practice among

many lenders as illustrated by Plaintiffs exhibit A (1-

98),Defendants are featured in this comprehensive presentation

from their economic  crimes division, provided courtesy of

Pamela Bondi Attorney General for the State of Florida.

   7.Defendants alleged council must provide this Court with a

certified Oath of Office for David S. Reidy and Carla Meninsky,

and provide a current liability policy and a current verifiable

bond, or there can be no appearance on behalf of the Defendants.

   8. In order to have subject matter jurisdiction, Defendants

alleged Council must provide this Court with the contract with

the Defendants that gives them the right to represent said

Defendants.

   9.The Defendants  are violating USC Title 18 242,243

by continuing to convert the Plaintiffs real property to their

own while never providing any proof of their right to do so.

The Defendants are clearly violating Plaintiffs 4th amendment

right to the Constitution of the United States of America.


                    PRAYER FOR RELIEF

Therefore the Plaintiff's, PETE REYNOSA AND PATRICIA REYNOSA,

respectfully requests that the Court recess until Defendants

alleged council provides the necessary documents to prove 1.

their right to be in Court 2.Their right to represent the

                            5

1   Defendants in the instant case. Award treble damages of

2   $1,095,000 for fraud. Any other Relief this Court deems

3   appropriate.

4   Dated this Seventh day of February, 2012.

5

6

7   _____          _____

8   PETE REYNOSA                         PATRICIA REYNOSA

9

10  110 ANNED DRIVE                      110 ANNED DRIVE
    PLACENTIA, CA 92870                  PLACENTIA CA 92870

11

12  714-598-9232                         714-598-9232

13

14

15

16

17

18

19

20

2

22

23

24

25

26

27

6

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.   CV-11-01955 CJC (ANX)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☑ Other *(specify):*  Placed a true and correct copy of the original in the US Mail to:  REED SMITH LLP,
101 Second Street, Suite 1800, San Francisco, CA  94105-3659
Attn:  David S. Reidy (SBN 225904), Carla Meninsky (SBN 233470)

My fees are $ _____0.00_____ for travel and $ _____0.00_____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date:  2/8/12

_____
*Server's signature*

Linda Drysol
*Printed name and title*

13746 Kiwi Avenue
Corona, CA  92880

_____
*Server's address*

Additional information regarding attempted service, etc:

http://sec.gov/Archives/edgar/data/1021913/000114420407057...

PLAINTIFF'S EXHIBIT "A-1"

424B5 1 v091930_424b5.htm
**PROSPECTUS SUPPLEMENT**
(To Prospectus dated August 13, 2007)

**$735,600,100**
(Approximate)
**CWABS, Inc.**
Depositor



**HOME LOANS**
Sponsor and Seller
**Countrywide Home Loans Servicing LP**
Master Servicer
**CWABS Asset-Backed Certificates Trust 2007-13**
Issuing Entity
**Asset-Backed Certificates, Series 2007-13**

Distributions payable monthly beginning November 26, 2007

The issuing entity will issue certificates, including the following classes of certificates that are offered pursuant to this prospectus supplement and the accompanying prospectus:

| Class | Original Certificate Principal Balance (1) | Class | Original Certificate Principal Balance (1) | Class | Original Certificate Principal Balance (1) | Class | Original Certificate Principal Balance (1) |
|---|---|---|---|---|---|---|---|
| 1-A | $218,300,000 | 2-M-1 | $16,884,000 | 1-M-4 | $5,180,000 | M-7 | $13,600,000 |
| 2-A-1 | $221,700,000 | 1-M-2 | $9,324,000 | 2-M-4 | $8,820,000 | M-8 | $10,400,000 |
| 2-A-2 | $135,000,000 | 2-M-2 | $15,876,000 | 1-M-5 | $4,736,000 | M-9 | $14,400,000 |
| 2-A-2M | $15,000,000 | 1-M-3 | $5,772,000 | 2-M-5 | $8,064,000 | A-R | $100 |
| 1-M-1 | $9,916,000 | 2-M-3 | $9,828,000 | M-6 | $12,800,000 | | |

(1)  This amount is subject to a permitted variance in the aggregate of plus or minus 10%.

**Consider carefully the risk factors beginning on page S-19 in this prospectus supplement and on page 2 in the prospectus.**

The certificates represent obligations of the issuing entity only and do not represent an interest in or obligation of CWABS, Inc., Countrywide Home Loans, Inc. or any of their affiliates.

This prospectus supplement may be used to offer and sell the offered certificates only if accompanied by the

The classes of certificates offered by this prospectus supplement, together with their pass-through rates and the methods of calculating them, are listed in the tables under "*Summary — Description of the Certificates*" on pages S-4 and S-5 of this prospectus supplement. This prospectus supplement and the accompanying prospectus relate only to the offering of the certificates listed above and not to the other classes of certificates that will be issued by the issuing entity.

The certificates represent interests in a pool of fixed rate and adjustable rate mortgage loans that are secured by first liens on one- to four-family residential properties, as described in this prospectus supplement. All of the mortgage loans were made to borrowers with blemished credit histories.

Credit enhancement for the certificates consists of:

·        Overcollateralization,

·        Excess Interest,

·        Subordination, and

·        Financial Guaranty Insurance Policy (in the case of the Class 2-A Certificates only).

The credit enhancement for each class of certificates varies. Not all credit enhancement is available for every class. The

prospectus.

credit enhancement for the certificates is described in more detail in this prospectus supplement.

Each class of senior and subordinate certificates (other than the Class A-R Certificates) also will have the benefit of an interest rate swap contract.

**These securities have not been approved or disapproved by the Securities and Exchange Commission or any state securities commission nor has the Securities and Exchange Commission or any state securities commission passed upon the accuracy or adequacy of this prospectus supplement or the prospectus. Any representation to the contrary is a criminal offense.**

Countrywide Securities Corporation will offer the Class A, Class 1-M-1 and Class 2-M-4 Certificates listed above, together with $5,000,000 of the Class 2-M-3 Certificates and $3,736,000 of the Class 1-M-5 Certificates listed above, to the public at varying prices to be determined at the time of sale. Those Class A, Class 1-M-1, Class 2-M-3, Class 2-M-4 and 1-M-5 Certificates will be purchased by Countrywide Securities Corporation on or about October 30, 2007. The other classes of offered certificates and the remaining portions of the Class 2-M-3 and Class 1-M-5 Certificates will not be purchased by Countrywide Securities Corporation and are being transferred to Countrywide Home Loans, Inc. as partial consideration for the sale of the mortgage loans. The proceeds to the depositor from the sale of those Class A, Class 1-M-1, Class 2-M-3, Class 2-M-4 and 1-M-5 Certificates are expected to be approximately $615,484,779 plus accrued interest, before deducting expenses. See "*Method of Distribution*" in this prospectus supplement.

## Countrywide Securities Corporation

October 29, 2007

Table of Contents

| **Prospectus Supplement** | **Page** |
|---|---|
| Summary | S-1 |
| Summary of Transaction Parties | S-18 |
| Risk Factors | S-19 |
| The Mortgage Pool | S-33 |
| General | S-33 |
| Assignment of the Mortgage Loans | S-37 |
| The Originators | S-40 |
| Underwriting Standards | S-40 |
| Servicing of the Mortgage Loans | S-46 |
| General | S-46 |
| Countrywide Home Loans Servicing LP | S-46 |
| Countrywide Home Loans | S-47 |
| Loan Servicing | S-49 |
| Collection Procedures | S-49 |
| Servicing Compensation and Payment of Expenses | S-50 |
| Adjustment to Master Servicing Fee in Connection With Certain Prepaid Mortgage Loans | S-50 |
| Advances | S-50 |
| Certain Modifications and Refinancings | S-51 |
| The Issuing Entity | S-51 |
| Static Pool Data | S-52 |
| Description of the Certificates | S-52 |
| General | S-52 |
| Book-Entry Certificates; Denominations | S-53 |
| Glossary of Terms | S-54 |
| Deposits to the Certificate Account | S-65 |
| Withdrawals from the Certificate Account | S-66 |
| Deposits to the Distribution Account | S-68 |
| Withdrawals from the Distribution Account | S-68 |
| Investments of Amounts Held in Accounts | S-69 |
| The Swap Account | S-69 |
| Fees and Expenses | S-70 |
| Distributions | S-73 |
| Overcollateralization Provisions | S-78 |
| The Swap Contract | S-80 |
| The Swap Counterparty | S-87 |
| Calculation of One-Month LIBOR | S-87 |
| Carryover Reserve Fund | S-88 |
| Financial Guaranty Insurance Policy | S-88 |
| The Certificate Insurer | S-91 |
| Credit Comeback Excess Account | S-93 |
| Final Maturity Reserve Fund | S-93 |
| Applied Realized Loss Amounts | S-96 |
| Reports to Certificateholders | S-97 |
| Amendment | S-98 |
| Voting Rights | S-99 |
| Optional Purchase of Defaulted Loans and Certain Delinquent Loans | S-99 |
| Events of Default; Remedies | S-100 |
| Optional Termination | S-101 |
| Certain Matters Regarding the Master Servicer, the Depositor, the Sellers and the NIM Insurer | S-102 |
| The Trustee | S-102 |
| Restrictions on Transfer of the Class A-R Certificates | S-104 |

| | |
|---|---|
| Ownership of the Residual Certificates | S-104 |
| Restrictions on Investment, Suitability Requirements | S-104 |
| Rights of the NIM Insurer Under the Pooling and Servicing Agreement | S-104 |
| Yield, Prepayment and Maturity Considerations | S-105 |
| General | S-105 |
| Prepayments and Yields for the Offered Certificates | S-106 |
| Last Scheduled Distribution Date | S-107 |
| Prepayment Model | S-108 |
| Decrement Tables; Weighted Average Lives | S-108 |
| Legal Proceedings | S-125 |
| Affiliations, Relationships and Related Transactions | S-125 |
| Material Federal Income Tax Consequences | S-125 |
| Taxation of the REMIC Regular Interest Components of the Regular Certificates | S-126 |
| Taxation of the Net Rate Carryover Components of the Regular Certificates | S-126 |
| Dispositions of Regular Certificates | S-128 |
| Tax Treatment For Certain Purposes | S-128 |
| Residual Certificates | S-128 |
| Other Taxes | S-129 |
| ERISA Considerations | S-129 |
| Method of Distribution | S-131 |
| Use of Proceeds | S-132 |
| Legal Matters | S-132 |
| Experts | S-132 |
| Ratings | S-132 |
| Index of Defined Terms | S-134 |
| Annex A—The Mortgage Pool | A-1 |
| Annex I—Global Clearance, Settlement and Tax Documentation Procedures | I-1 |

i

| Prospectus | Page |
|---|---|

| | |
|---|---|
| Important Notice About Information in This Prospectus and Each Accompanying Prospectus Supplement | 1 |
| Risk Factors | 2 |
| The Trust Fund | 14 |
| Use of Proceeds | 27 |
| The Depositor | 27 |
| Loan Program | 27 |
| Static Pool Data | 30 |
| Description of the Securities | 31 |
| Credit Enhancement | 46 |
| Yield, Maturity and Prepayment Considerations | 50 |
| The Agreements | 54 |
| Certain Legal Aspects of the Loans | 73 |
| Material Federal Income Tax Consequences | 86 |
| Other Tax Considerations | 107 |
| ERISA Considerations | 107 |
| Legal Investment | 111 |
| Method of Distribution | 112 |
| Legal Matters | 113 |
| Financial Information | 113 |
| Rating | 113 |
| Index of Defined Terms | 115 |

ii

# SUMMARY

**This summary highlights selected information from this document and does not contain all of the information that you need to consider when making your investment decision. To understand all of the terms of an offering of the certificates, read this entire document and the accompanying prospectus carefully.**

**While this summary contains an overview of certain calculations, cash flow priorities and other information to aid your understanding, you should read carefully the full description of these calculations, cash flow priorities and other information in this prospectus supplement and the accompanying prospectus before making any investment decision.**

### *Issuing Entity*

CWABS Asset-Backed Certificates Trust 2007-13, a common law trust formed under the laws of the State of New York.

*See "The Issuing Entity" in this prospectus supplement.*

### Depositor

CWABS, Inc., a Delaware corporation and a limited purpose finance subsidiary of Countrywide Financial Corporation, a Delaware corporation.

*See "The Depositor" in the prospectus.*

### *Sponsor and Sellers*

Countrywide Home Loans, Inc. will be the sponsor of the transaction and a seller of a portion of the mortgage loans. Other sellers may include one or more special purpose entities established by Countrywide Financial Corporation or one of its subsidiaries, which acquired the mortgage loans they are selling directly from Countrywide Home Loans, Inc.

*See "Servicing of the Mortgage Loans — Countrywide Home Loans" in this prospectus supplement.*

### *Originators*

Countrywide Home Loans, Inc. originated approximately 85.36% and 95.12% of the mortgage loans in loan group 1 and loan group 2, respectively, and Wilmington Finance Inc. originated approximately 13.85% and 4.42% of the mortgage loans in loan group 1 and loan group 2, respectively, in each case by aggregate stated principal balance as of the cut-off date. The remaining mortgage loans were originated by various other originators, each of which, individually, originated less than 1% of the mortgage loans in either loan group by aggregate stated principal balance as of the cut-off date.

*See "The Mortgage Pool — The Originators" in this prospectus supplement.*

### *Master Servicer*

Countrywide Home Loans Servicing LP.

*See "Servicing of the Mortgage Loans — Countrywide Home Loans Servicing LP" in this prospectus supplement.*

### *Trustee*

The Bank of New York, a New York banking corporation.

*See "Description of the Certificates — The Trustee" in this prospectus supplement.*

**The NIM Insurer**

After the closing date, our affiliate expects to establish a separate trust to issue net interest margin securities secured by all or a portion of the Class P and Class C Certificates. Those net interest margin securities may have the benefit of one or more financial guaranty insurance policies that guarantee payments on those securities. The insurer or insurers issuing these financial guaranty insurance policies are referred to in this prospectus supplement collectively as the "NIM Insurer". The references to the NIM Insurer in this prospectus supplement apply only if the net interest margin securities are so insured.

Any NIM Insurer will have a number of rights under the pooling and servicing agreement that will limit and otherwise affect the rights of the holders of the offered certificates. Any insurance policy issued by a NIM Insurer will not cover, and will not benefit in any manner whatsoever, the offered certificates.

*See "Risk Factors—Rights of the NIM Insurer Limit Your Control and NIM Insurer Actions May Negatively Affect You" in this prospectus supplement.*

S-1

*Pooling and Servicing Agreement*

The pooling and servicing agreement among the sellers, the master servicer, the depositor and the trustee, under which the issuing entity will be formed.

*Cut-off Date*

For any mortgage loan, the later of October 1, 2007 and the origination date of that mortgage loan.

*Closing Date*

On or about October 30, 2007.

*Interest Shortfall Payments*

With respect to the first distribution date, Countrywide Home Loans, Inc. will deposit one month's interest at the adjusted mortgage rate for each mortgage loan that does not have a monthly payment date in the related due period.

*The Mortgage Loans*

The mortgage pool will consist of fixed rate and adjustable rate credit-blemished mortgage loans that are secured by first liens on one- to four-family residential properties. The mortgage loans will be divided into two separate groups. Each group of mortgage loans is referred to as a "loan group". Loan group 1 will consist of first lien conforming balance fixed rate and adjustable rate mortgage loans. Loan group 2 will consist of first lien fixed rate and adjustable rate mortgage loans, which may or may not have conforming balances.

The information with respect to the mortgage pool is, unless otherwise specified, based on the scheduled principal balances as of the cut-off date. The aggregate stated principal balance of the mortgage pool as of the cut-off date is referred to as the cut-off date pool principal balance. As of the cut-off date, the cut-off date pool principal balance was approximately $799,999,980.

Unless otherwise noted, all statistical percentages are measured by the cut-off date pool principal balance.

As of the cut-off date, the group 1 mortgage loans had the following characteristics:

| | |
|---|---|
| Aggregate Current Principal Balance | $295,999,999 |
| Weighted Average Mortgage Rate | 8.896% |
| Range of Mortgage Rates | 5.375% to 14.000% |
| Average Current Principal Balance | $199,730 |
| Range of Current Principal Balances | $24,975 to $618,955 |
| Weighted Average Original Loan-to-Value Ratio | 74.59% |
| Weighted Average Original Term to Maturity | 401 months |
| Weighted Average Remaining Term to Stated Maturity | 399 months |
| Weighted Average Credit Bureau Risk Score | 581 points |

http://sec.gov/Archives/edgar/data/1021913/000114420407057...

| | |
|---|---|
| Weighted Average Gross Margin* | 6.263% |
| Weighted Average Maximum Mortgage Rate* | 15.820% |
| Weighted Average Minimum Mortgage Rate* | 8.933% |
| Percentage Originated under Full<br>    Doc Program | 73.62% |
| Geographic Concentrations in excess of 10%: | |
|    California | 21.77% |
|    Florida | 11.58% |

_____

* Percentage presented only reflects those group 1 mortgage loans that are adjustable rate mortgage loans.

S-2

As of the cut-off date, the group 2 mortgage loans had the following characteristics:

| | |
|---|---|
| Aggregate Current Principal Balance | $503,999,981 |
| Weighted Average Mortgage Rate | 8.755% |
| Range of Mortgage Rates | 5.375% to 15.875% |
| Average Current Principal Balance | $268,514 |
| Range of Current Principal Balances | $8,934 to $999,447 |
| Weighted Average Original Loan-to-Value Ratio | 76.04% |
| Weighted Average Original Term to Maturity | 393 months |
| Weighted Average Remaining Term to Stated Maturity | 391 months |
| Weighted Average Credit Bureau Risk Score | 599 points |
| Weighted Average Gross Margin* | 6.562% |
| Weighted Average Maximum Mortgage Rate* | 15.674% |
| Weighted Average Minimum Mortgage Rate* | 8.800% |
| Percentage Originated under Full Doc Program | 71.39% |
| Geographic Concentrations in excess of 10%: | |
| California | 33.12% |
| Florida | 12.45% |

* Percentage presented only reflects those group 2 mortgage loans that are adjustable rate mortgage loans.

Additional information regarding the mortgage loans in the mortgage pool is attached as Annex A to this prospectus supplement.

S-3

*Description of the Certificates*

The issuing entity will issue the following classes of certificates:

| Class | | Original Certificate Principal Balance (1) | Type | Last Scheduled Distribution Date (2) | Initial Rating (Moody's) (3) | Initial Rating (S&P) (3) |
|---|---|---|---|---|---|---|
| *Offered Certificates* | | | | | | |
| 1-A | $ | 218,300,000 | Senior/Adjustable Rate | June 25, 2036 | Aaa | AAA |
| 2-A-1 | $ | 221,700,000 | Senior/Adjustable Rate | February 25, 2036 | Aaa | AAA |
| 2-A-2 | $ | 135,000,000 | Super Senior/Adjustable Rate | February 25, 2036 | Aaa | AAA |
| 2-A-2M | $ | 15,000,000 | Senior Support/Adjustable Rate | February 25, 2036 | Aaa | AAA |
| 1-M-1 | $ | 9,916,000 | Subordinate/Adjustable Rate | December 25, 2036 | Aa1 | AA+ |
| 2-M-1 | $ | 16,884,000 | Subordinate/Adjustable Rate | December 25, 2036 | Aa1 | AA+ |
| 1-M-2 | $ | 9,324,000 | Subordinate/Adjustable Rate | June 25, 2037 | Aa2 | AA |
| 2-M-2 | $ | 15,876,000 | Subordinate/Adjustable Rate | June 25, 2037 | Aa2 | AA |
| 1-M-3 | $ | 5,772,000 | Subordinate/Adjustable Rate | October 25, 2037 | Aa3 | AA- |
| 2-M-3 | $ | 9,828,000 | Subordinate/Adjustable Rate | September 25, 2037 | Aa3 | AA- |
| 1-M-4 | $ | 5,180,000 | Subordinate/Adjustable Rate | January 25, 2038 | A1 | A+ |
| 2-M-4 | $ | 8,820,000 | Subordinate/Adjustable Rate | December 25, 2037 | A1 | A+ |
| 1-M-5 | $ | 4,736,000 | Subordinate/Adjustable Rate | January 25, 2038 | A2 | A |
| 2-M-5 | $ | 8,064,000 | Subordinate/Adjustable Rate | January 25, 2038 | A2 | A |
| M-6 | $ | 12,800,000 | Subordinate/Adjustable Rate | February 25, 2038 | A3 | A- |
| M-7 | $ | 13,600,000 | Subordinate/Adjustable Rate | February 25, 2038 | Baa1 | BBB+ |
| M-8 | $ | 10,400,000 | Subordinate/Adjustable Rate | April 25, 2038 | Baa2 | BBB |
| M-9 | $ | 14,400,000 | Subordinate/Adjustable Rate | April 25, 2038 | Baa3 | BBB- |
| A-R | $ | 100 | Senior/REMIC Residual | November 26, 2007 | Aaa | AAA |
| *Non-Offered Certificates (4)* | | | | | | |
| P | $ | 100 | Prepayment Charges | N/A | N/R | N/R |
| C | | N/A | Excess Cashflow | N/A | N/R | N/R |

(1)  This amount is subject to a permitted variance in the aggregate of plus or minus 10% depending on the amount of mortgage loans actually delivered on the closing date.

(2)  Each date was determined as described under *"Yield, Prepayment and Maturity Considerations"* in this prospectus supplement.

(3)  The offered certificates will not be offered unless they are assigned the indicated ratings by Moody's Investors Service, Inc. (*"Moody's"*) and Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc. (*"S&P"*). "N/R" indicates that the rating agency was not asked to rate the class of certificates. A rating is not a recommendation to buy, sell or hold securities. These ratings may be lowered or withdrawn at any time by either of the rating agencies. *See "Ratings" in this prospectus supplement.*

(4)  The Class P and Class C Certificates are not offered by this prospectus supplement. Any information contained in this prospectus supplement with respect to the Class P and Class C Certificates is provided only to permit a better understanding of the offered certificates.

S-4

http://sec.gov/Archives/edgar/data/1021913/000114420407057...

The certificates will also have the following characteristics:

| Class | Related Loan Group | Pass-Through Rate On or Before Optional Termination Date | Pass-Through Rate After Optional Termination Date | Accrual Period | Interest Accrual Convention |
|---|---|---|---|---|---|
| *Offered Certificates* | | | | | |
| 1-A | 1 | LIBOR + 0.840% (1) | LIBOR + 1.680% (1) | (2) | Actual/360 (3) |
| 2-A-1 | 2 | LIBOR + 0.900% (1) | LIBOR + 1.800% (1) | (2) | Actual/360 (3) |
| 2-A-2 | 2 | LIBOR + 0.800% (1) | LIBOR + 1.600% (1) | (2) | Actual/360 (3) |
| 2-A-2M | 2 | LIBOR + 1.250% (1) | LIBOR + 2.500% (1) | (2) | Actual/360 (3) |
| 1-M-1 | 1 | LIBOR + 1.500% (1) | LIBOR + 2.250% (1) | (2) | Actual/360 (3) |
| 2-M-1 | 2 | LIBOR + 1.500% (1) | LIBOR + 2.250% (1) | (2) | Actual/360 (3) |
| 1-M-2 | 1 | LIBOR + 1.750% (1) | LIBOR + 2.625% (1) | (2) | Actual/360 (3) |
| 2-M-2 | 2 | LIBOR + 1.750% (1) | LIBOR + 2.625% (1) | (2) | Actual/360 (3) |
| 1-M-3 | 1 | LIBOR + 2.000% (1) | LIBOR + 3.000% (1) | (2) | Actual/360 (3) |
| 2-M-3 | 2 | LIBOR + 2.000% (1) | LIBOR + 3.000% (1) | (2) | Actual/360 (3) |
| 1-M-4 | 1 | LIBOR + 2.500% (1) | LIBOR + 3.750% (1) | (2) | Actual/360 (3) |
| 2-M-4 | 2 | LIBOR + 2.500% (1) | LIBOR + 3.750% (1) | (2) | Actual/360 (3) |
| 1-M-5 | 1 | LIBOR + 3.000% (1) | LIBOR + 4.500% (1) | (2) | Actual/360 (3) |
| 2-M-5 | 2 | LIBOR + 3.000% (1) | LIBOR + 4.500% (1) | (2) | Actual/360 (3) |
| M-6 | 1 and 2 | LIBOR + 3.000% (1) | LIBOR + 4.500% (1) | (2) | Actual/360 (3) |
| M-7 | 1 and 2 | LIBOR + 3.000% (1) | LIBOR + 4.500% (1) | (2) | Actual/360 (3) |
| M-8 | 1 and 2 | LIBOR + 3.000% (1) | LIBOR + 4.500% (1) | (2) | Actual/360 (3) |
| M-9 | 1 and 2 | LIBOR + 3.000% (1) | LIBOR + 4.500% (1) | (2) | Actual/360 (3) |
| A-R | 1 and 2 | (4) | (4) | N/A | N/A |
| *Non-Offered Certificates* | | | | | |
| P | 1 and 2 | N/A | N/A | N/A | N/A |
| C | 1 and 2 | N/A | N/A | N/A | N/A |

(1)  The pass-through rate for this class of certificates may adjust monthly, will be subject to increase after the optional termination date as shown in this table and will be subject to an interest rate cap, in each case as described in this prospectus supplement under "*Description of the Certificates — Distributions — Distributions of Interest*". LIBOR refers to One-Month LIBOR for the related accrual period calculated as described in this prospectus supplement under "*Description of the Certificates — Calculation of One-Month LIBOR*".

(2)  The accrual period for any distribution date will be the period from and including the preceding distribution date (or from and including the closing date, in the case of the first distribution date) to and including the day prior to the current distribution date. These certificates will settle without accrued interest.

(3)  Interest accrues at the rate specified in this table based on a 360-day year and the actual number of days elapsed during the related accrual eriod.

(4)  The Class A-R Certificates will not accrue any interest.

*See "Description of the Certificates" in this prospectus supplement.*

*Designations*

| Designation | Class of Certificates |
|---|---|
| *Class A Certificates:* | Class 1-A and Class 2-A Certificates. |
| *Class 2-A Certificates:* | Class 2-A-1, Class 2-A-2 and Class 2-A-2M Certificates. |
| *Senior Certificates:* | Class A and Class A-R Certificates. |
| *Class M Certificates or Subordinate Certificates:* | Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7, Class M-8 and Class M-9 Certificates. |
| *Class M-1 Certificates:* | Class 1-M-1 and Class 2-M-1 Certificates. |
| *Class M-2 Certificates:* | Class 1-M-2 and Class 2-M-2 Certificates. |
| *Class M-3 Certificates:* | Class 1-M-3 and Class 2-M-3 Certificates. |
| *Class M-4 Certificates:* | Class 1-M-4 and Class 2-M-4 Certificates. |
| *Class M-5 Certificates:* | Class 1-M-5 and Class 2-M-5 Certificates. |
| *Adjustable Rate Certificates or Swap Certificates:* | Class A Certificates and Subordinate Certificates. |
| *Group 1 Certificates:* | Class 1-A, Class 1-M-1, Class 1-M-2, Class 1-M-3, Class 1-M-4 and Class 1-M-5 Certificates. |
| *Group 2 Certificates:* | Class 2-A, Class 2-M-1, Class 2-M-2, Class 2-M-3, Class 2-M-4 and Class 2-M-5 Certificates. |
| *Offered Certificates:* | Adjustable Rate Certificates and Class A-R Certificates. |

**Record Date**

*Adjustable Rate Certificates:*

The business day immediately preceding a distribution date, or if the adjustable rate certificates are no longer book-entry certificates, the last business day of the month preceding the month of a distribution date.

*Class A-R Certificates:*

The last business day of the month preceding the month of a distribution date.

**Denominations**

$20,000 and multiples of $1 in excess thereof, except that the Class A-R Certificates will be issued as two certificates in the denominations specified in the pooling and servicing agreement.

*Registration of Certificates*

Offered Certificates other than the Class A-R Certificates:

Book-entry form. Persons acquiring beneficial ownership interests in the offered certificates (other than the Class A-R Certificates) will hold their beneficial interests through The Depository Trust Company, in the United States, or Clearstream, Luxembourg or the Euroclear System, in Europe.

*Class A-R Certificates:*

Fully registered certificated form. The Class A-R Certificates will be subject to certain restrictions on transfer described in this prospectus supplement and as more fully provided for in the pooling and servicing agreement.

*See "Description of the Certificates — Book-Entry Certificates" and "— Restrictions on Transfer of the Class A-R Certificates" in this prospectus supplement.*

**Distribution Dates**

Beginning on November 26, 2007, and thereafter on the 25th day of each calendar month, or if the 25th is not a business day, the next business day.

**Interest Payments**

On each distribution date, holders of each class of interest-bearing certificates will be entitled to receive:

- the interest that has accrued during the related accrual period at the related pass-through rate on the certificate principal balance immediately prior to the applicable distribution date, and

- any interest due on a prior distribution date that was not paid.

The accrual period, interest accrual convention and pass-through rate (or calculation method) for each class of interest-bearing certificates is shown in the table on page S-5.

For each class of subordinate certificates, any interest carry forward amount (which is interest due on a

---

S-6

---

prior distribution date that was not paid on a prior distribution date) will be payable from excess cashflow and from amounts in the swap trust, in each case as and to the extent described in this prospectus supplement.

There are certain circumstances that could reduce the amount of interest paid to you.

*See "Description of the Certificates — Distributions — Distributions of Interest" in this prospectus supplement.*

**Principal Payments**

On each distribution date, certificateholders will receive a distribution of principal on their certificates only if there is cash available on that date for the payment of principal. The priority of payments will differ, as described in this prospectus supplement, depending upon whether a distribution date occurs before the stepdown date, or on or after that date, and will depend on the loss and delinquency performance of the mortgage loans.

*See "Description of the Certificates — Distributions — Distributions of Principal" in this prospectus supplement.*

**Amounts Available for Distributions on the Certificates**

Amounts Available with respect to Interest Distributions

The amount available for interest distributions on the certificates on any distribution date will be calculated on a loan group by loan group basis and will generally consist of the following amounts with respect to the mortgage loans in a loan group (after the fees and expenses as described below are subtracted):

- scheduled payments of interest on the mortgage loans collected during the applicable period (other than any credit comeback excess amounts);

- interest on prepayments to the extent not allocable to the master servicer as additional servicing compensation;

- interest amounts advanced by the master servicer and any required compensating interest paid by the master servicer related to certain prepayments on certain mortgage loans;

- liquidation proceeds on the mortgage loans during the applicable period (to the extent allocable to interest); and

- the seller interest shortfall payments, if any, paid by Countrywide Home Loans, Inc.

Amounts Available with respect to Principal Distributions

The amount available for principal distributions on the certificates on any distribution date will be calculated on a loan group by loan group basis and will generally consist of the following amounts with respect to the mortgage loans in a loan group (after fees and expenses as described below are subtracted):

- scheduled payments of principal of the mortgage loans collected during the applicable period or advanced by the master servicer;

- prepayments collected in the applicable period;

- the stated principal balance of any mortgage loan repurchased by a seller or purchased by the master servicer;

- the excess, if any, of the stated principal balance of a deleted mortgage loan over the stated principal balance of the related substitute mortgage loan;

http://sec.gov/Archives/edgar/data/1021913/000114420407057...

- liquidation proceeds on the mortgage loans during the applicable period (to the extent allocable to principal); and

- excess interest (to the extent available) to maintain or restore the targeted overcollateralization level as described under *"Description of the Certificates — Overcollateralization Provisions"* in this prospectus supplement.

<u>Fees and Expenses</u>

The amounts available for distributions on the certificates on any distribution date generally will not include the following amounts calculated on a loan group by loan group basis:

- the master servicing fee and additional servicing compensation due to the master servicer (as described in this prospectus supplement under *"Description of the Certificates — Withdrawals from the Certificate Account"* and *"—Withdrawals from the Distribution Account"*);

- the pro rata portion of the trustee fee due to the trustee;

- amounts reimbursed to the master servicer and

---

S-7

---

http://sec.gov/Archives/edgar/data/1021913/000114420407057...

the trustee in respect of advances previously made by them and other amounts for which the master servicer or the trustee are entitled to be reimbursed;

·   all prepayment charges (which are distributable only to the Class P Certificates);

·   all other amounts for which the depositor, a seller, the master servicer or any NIM Insurer is entitled to be reimbursed;

·   the pro rata portion of any net swap payments or any termination payment payable to the swap counterparty (other than a swap termination payment resulting from a swap counterparty trigger event); and

·   the premiums for the Class 2-A Policy.

These amounts will reduce the amount that could have been distributed to the certificateholders.

*Final Maturity Reserve Fund*

On each distribution date beginning on the distribution date in November 2017 and ending on the distribution date in October 2037, if the aggregate stated principal balance of the mortgage loans having an original term to maturity of 40 years as of the first day of the related due period is greater than the 40-year target for that distribution date, a portion of the interest funds for loan group 1 and loan group 2 in an aggregate amount equal to the lesser of (a) one-twelfth of the product of (i) 0.80% and (ii) the aggregate stated principal balance of the mortgage loans with original terms to maturity of 40 years as of the first day of the related due period, and (b) the excess of (i) the final maturity funding cap for that distribution date over (ii) the amount on deposit in the final maturity reserve fund immediately prior to that distribution date will be deposited in the final maturity reserve fund until the amount on deposit in the final maturity reserve fund is equal to the final maturity funding cap. On the distribution date in October 2037, any amounts on deposit in the final maturity reserve fund will be distributed to the certificates as principal as described in this prospectus supplement. Upon termination of the issuing entity, any amounts remaining in the final maturity reserve fund will be distributed to the Class C Certificates.

*See "Yield, Prepayment and Maturity Considerations —Last Scheduled Distribution Date" and "Description of the Certificates —Final Maturity Reserve Fund" in this prospectus supplement.*

*Servicing Compensation*

*Master Servicing Fee:*

The master servicer will be paid a monthly fee (referred to as the master servicing fee) with respect to each mortgage loan equal to one-twelfth of the stated principal balance of that mortgage loan multiplied by 0.50% per annum, which is referred to as the servicing fee rate.

*Additional Servicing Compensation:*

The master servicer is also entitled to receive additional servicing compensation from amounts in respect of interest paid on certain principal prepayments, late payment fees, assumption fees and other similar charges (excluding prepayment charges) and investment income earned on amounts on deposit in certain of the issuing entity's accounts.

*Source and Priority of Payments:*

These amounts will be paid to the master servicer from collections on the mortgage loans prior to any distributions on the certificates.

*See "Servicing of the Mortgage Loans — Servicing Compensation and Payment of Expenses," "Description of the Certificates — Withdrawals from the Certificate Account" and "— Withdrawals from the Distribution Account" in this prospectus supplement.*